**Affirmed as Modified and Memorandum Opinion filed December 5, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00526-CR

**BRIAN ALEXANDER WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 1654124**

## M E M O R A N D U M   O P I N I O N

Appellant Brian Alexander Washington appeals his conviction for continuous sexual abuse of a child. In two issues, appellant contends that the trial court reversibly erred by overruling two objections to the State's closing arguments and that the trial court assessed statutorily unauthorized court costs. We hold that the trial court did not abuse its discretion by overruling his objections, and in any event, appellant was not harmed. We agree, however, that the trial court assessed a higher

amount of costs than permitted by the applicable statute. We modify the judgment to delete the unauthorized costs and affirm the judgment as modified.

## Background

Because appellant has not challenged the sufficiency of the evidence, we provide only a brief recitation of the underlying facts and include any additional facts necessary for disposition of the appeal in the analysis section below. *See* Tex. R. App. P. 47.1.

When the complainant, who we refer to as Elise, was around seven years old, appellant, who was in his mid-thirties, began staying with Elise's family on a regular basis.[1] Appellant became particularly close with Elise, often sleeping in the same room with her. One day, Elise told her mother that appellant had touched her "down there," pointing to her vaginal area. Elise told her mother it had happened before and recounted a particular incident in which appellant did "nasty stuff" to her and tried to force his penis[2] in her mouth. Elise also told her mother he tried to put his penis "inside [her] butt but it hurt and he stopped." Elise's mother confronted appellant, who denied the allegations and asked her not to contact police. After Elise's mother contacted police, appellant left. Officers arrived, and Elise's mother explained what had occurred. A grand jury later indicted appellant for continuous sexual abuse of a child.

At the time of appellant's trial, Elise was fourteen years old. She testified and described several incidents where appellant sexually assaulted her by putting his penis in her anus or her mouth. Elise estimated that appellant put his penis in her mouth about ten times, and she also described an incident where he tried to put his

---

[1] Appellant was Elise's mother's cousin.

[2] Elise referred to appellant's penis as his "thing" or his "private area."

2

penis in her vagina, was unsuccessful, and forced Elise to put his penis in her mouth. Elise estimated that the assaults occurred over a period of about two and a half months. Elise also testified that appellant showed her pornography.

A sexual assault nurse examiner ("SANE") examined Elise shortly after Elise's outcry. The SANE testified that Elise was seven years old at the time of the examination. Elise told the nurse about one instance where appellant put his "middle part" in her mouth, and she also described appellant doing "nasty stuff" to her. She also revealed that appellant's "middle part" touched her butt and vaginal area more than once. Oral, vaginal, and anal swabs were collected. There were no injuries noted on Elise's vagina, but two small anal tears were noted, although there was no bleeding or bruising. The SANE testified that the tears could have been caused by anal penetration.

The Children's Assessment Center also conducted a forensic interview with Elise. During the interview, Elise disclosed sexual abuse and identified appellant as the person who abused her.

Appellant testified that, on the evening that Elise's mother confronted him, she initially told him that she caught Elise "watching porn again." Appellant left to go to the store, and when he returned, Elise's mother told him that Elise said appellant was the reason she was watching porn and that he had inappropriately touched her. Appellant told Elise's mother that it was not true, but she told him to leave. He later voluntarily talked with police and provided a DNA sample. Appellant denied ever doing "anything inappropriate" with Elise. He speculated that Elise may have made up the allegations against him to prevent herself from getting into trouble for getting caught watching pornography.

During its case-in-chief, the State presented stipulated evidence that appellant had been convicted in 2007 of aggravated sexual assault of another child under

3

fourteen years old. In that case, the complainant was thirteen years old when the offense occurred in 2006, and appellant pleaded guilty. Appellant was sentenced to seven years in the Texas Department of Criminal Justice—Institutional Division ("TDCJ") for that earlier offense.

During cross-examination, appellant denied that he sexually assaulted the thirteen-year-old, despite confessing in 2006. He explained that he accepted a seven-year plea offer because his counsel was not properly representing him or investigating his case. He stated, "I am not a child predator. I don't prey on children. I have never touched any child like that." The prosecutor then asked him whether he had impregnated a twelve-year-old, and appellant admitted that he had. He testified that he was around twenty or twenty-one when it happened and that the child had lied about her age.

After hearing the evidence and argument of counsel, the jury found him guilty of continuous sexual abuse of a child, and the trial court sentenced him to forty years' confinement in TDCJ.

Appellant timely appealed.

## Analysis

### A. Objections to Prosecutor's Closing Argument

In his first issue, appellant argues that the trial court reversibly erred by overruling two of appellant's objections to the prosecutor's closing arguments.

The law provides for, and presumes, a fair trial, free from improper argument by the State. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) (per curiam). In general, the four proper areas of jury argument are: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to opposing

4

counsel's argument; and (4) pleas for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). We analyze closing argument in light of the entire record, not just on the argument's isolated occurrence. *Smith v. State*, 483 S.W.3d 648, 657 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Even when a statement exceeds the bounds of proper jury argument, it will not constitute reversible error unless, in light of the whole record, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Smith*, 483 S.W.3d at 657. The remarks must have been a willful and calculated effort on the part of the State to deprive the defendant of a fair and impartial trial. *Wesbrook*, 29 S.W.3d at 115.

Improper jury arguments constitute non-constitutional error. *Freeman*, 340 S.W.3d at 728. Non-constitutional errors must be disregarded unless they affect a defendant's substantial rights. Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016). On the other hand, if the error did not influence the jury or had but a slight effect, the jury's verdict should stand.

1. *The trial court did not abuse its discretion.*

We first consider whether the prosecutor's comments were in fact improper, and thus whether the trial court's rulings on appellant's objections were erroneous. *See Nadal v. State*, 348 S.W.3d 304, 319 (Tex. App.—Houston [14th Dist.] 2011,

pet. ref'd); *Crocker v. State*, 248 S.W.3d 299, 304 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

### a. First objection

During appellant's closing argument, his counsel claimed that the lack of injuries to the Elise's vagina and anus should create reasonable doubt that these assaults occurred. Specifically, defense counsel argued that the nurse examiner who conducted the exam testified that "the anal injury that [the complainant] had was minor enough that it could have been from passing a stool." Defense counsel also argued that DNA evidence "could have disappeared because of regular bathing and washing and things like that," and that "really as far as the proof, or lack thereof, that's presented, oral sexual assault is really the only possible thing that you can explain there being no real evidence of because of the nature of it."

In response to this argument, the prosecutor suggested that there were valid explanations why certain evidence might not exist:

> DNA, we know it doesn't exist. [Elise]'s brushing her teeth. She's washing her face. She's going to the bathroom. She's wiping. And we also learn predators, people who like to molest children, know not to leave evidence, right. *They don't want the mother to come home and find a child bleeding from their rectum.*

Defense counsel objected that the state was arguing "facts outside the record" because "[t]here's been no testimony that the mother came home and found any bleeding outside the rectum." The trial court overruled the objection.

As with many child sexual assault cases, there was little physical evidence of the abuse. As noted above, a sexual assault exam conducted the day after Elise's outcry revealed small anal tears consistent with anal penetration, but no bleeding. The SANE, who examined seven-year-old Elise, testified, "[A] lot of times, when children are abused, we know that if you cause an injury, then there's more likely to

6

tell and — or there's more likely to find out.  So a lot of perpetrators will do things where they don't — or try not to cause injury."  The prosecutor's statement is a reasonable deduction from the SANE's testimony.

Further, the statement is a response to opposing counsel's argument regarding the lack of physical evidence.  As explained above, a response to opposing counsel's argument is an appropriate jury argument.  *E.g.*, *Freeman*, 340 S.W.3d at 727.  "A defendant cannot complain of improper prosecutorial argument if he invited the argument."  *Ripkowski v. State*, 61 S.W.3d 378, 393 (Tex. Crim. App. 2001); *see Smith*, 483 S.W.3d at 648.  The prosecutor's brief statement was not a willful or calculated effort on the part of the State to deprive the defendant of a fair trial.  Thus, the trial court did not abuse its discretion in overruling appellant's objection.  *Cf. e.g.*, *Ripkowski*, 61 S.W.3d at 393; *Smith*, 483 S.W.3d at 648; *Longoria v. State*, 154 S.W.3d 747, 766 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

> b.      Second objection

Later during the State's rebuttal argument, the prosecutor briefly addressed defense counsel's argument implying that Elise fabricated the accusations against appellant to avoid punishment for watching pornography:

> We heard about pornography.  Do you think they haven't moved on from that discussion, that family?  Even if there was something that was seen somewhere, it's seven years later.  [Elise]'s not in trouble for that yet she has been consistent over the years, right.  This isn't a longstanding grudge from the family.  *And also, they're talking about YouTube.  There's not porn on YouTube. Use your common sense on that.*

Defense counsel objected that the State was again "[a]rguing something outside of the evidence presented in this case."  The trial court overruled the objection.

First, statements of common knowledge are an exception to the general rule against arguing facts outside the evidence. *See Nenno v. State*, 970 S.W.2d 549, 559 (Tex. Crim. App. 1998), *overruled in part on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999); *Temple v. State*, 342 S.W.3d 572, 608 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013); *Wright v. State*, 178 S.W.3d 905, 932 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). YouTube is a well-known website, and most people would be aware of the nature of the videos posted there. Thus, the trial court could have determined that the prosecutor's comment was an appeal to the jurors' common knowledge. *See Wright*, 178 S.W.3d at 932 (overruling objection to prosecutor's comments concerning parents' willingness to sacrifice their own life for their child's because it was an appeal to common knowledge). Appellant has not shown the trial court abused its discretion in overruling his second objection.

2. *Appellant has not shown harm by the court's ruling on the second objection.*

We also conclude that appellant was not harmed by the trial court's error, if any, in overruling his second objection. Any non-constitutional error, such as improper jury argument, requires reversal only if it had "a substantial and injurious effect or influence on the jury's verdict." *E.g., Orsag v. State*, 312 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). To determine whether an improper jury argument is harmful, we consider the severity of the misconduct or its prejudicial effect, any curative measures taken, and the certainty of conviction absent the misconduct. *See id.*

Although there were no curative measures taken, the other two factors militate against harm. First, whether pornography exists on YouTube has little bearing on whether appellant committed the offense of continuous sexual abuse of a child.

8

Thus, the purported misconduct was not particularly severe, nor did it have a prejudicial effect. Second, Elise described multiple sexual assaults committed by appellant. Her testimony, standing alone, is sufficient to support the jury's verdict. *See* Tex. Code Crim. Proc. art. 38.07(a), (b)(1); *Garrett v. State*, 693 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd). Indeed, appellant has not challenged the sufficiency of the evidence to support his conviction. Thus, the likelihood of his conviction absent the misconduct is high. After reviewing the entire record, we are fairly assured that the error, if any, did not influence the jury, or had but very slight effect. *Cf. Thomas*, 505 S.W.3d at 926. Thus, appellant was not harmed by the trial court's error, if any, in overruling appellant's objection.

\* \* \*

Accordingly, we overrule appellant's first issue.

## B. Court Costs

In his second issue, appellant asks this court to modify the trial court's judgment to remove $52 in court costs because the trial court imposed $185 for the State Consolidated Court Cost instead of $133, which is the amount authorized under the statute in effect at the time of appellant's offense.

In the 2019 legislative session, the Legislature amended Local Government Code section 133.102. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 1.03. Section 133.102 authorizes imposition of certain costs and fees against a person convicted of an offense. *See* Tex. Loc. Gov't Code § 133.102 (entitled "Consolidated Fees on Conviction"). Whereas prior to the amendment, the statute provided that a person convicted of a felony shall pay a "court cost" of $133, *see id.* § 133.102(a)(1) (West 2017), the new version increased that amount to $185. *Id.* § 133.102(a)(1) (West 2020); *see also* Act of May 23, 2019, 86th Leg., R.S., ch.

9

1352, § 1.03(a)(1). The 2019 legislative act also states that, except as otherwise provided, the changes in law apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of the act, which was January 1, 2020. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, §§ 5.01, 5.04.

It is undisputed that appellant allegedly committed the offense in this case in 2015, which was prior to the effective date of the legislative change to section 133.102. The State agrees that the trial court should have only assessed $133 in consolidated court costs. Accordingly, we sustain appellant's second issue and modify the trial court's judgment to reflect a decrease of $52 in assessed court costs.

## Conclusion

We modify the trial court's judgment to reflect an assessment of $133 in consolidated court costs, which decreases the total costs by $52. We leave undisturbed the remainder of the trial court's judgment, and we affirm the judgment as modified.

/s/     Kevin Jewell
      Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.

Do Not Publish — Tex. R. App. P. 47.2(b).